**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| A.A., | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:18-CV-2142 (JCH) |
| | : | |
|     v. | : | |
| | : | |
| AVON BOARD OF EDUCATION, ET | : | |
| AL, | : | JANUARY 14, 2020 |
|     Defendants. | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 23),
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT (DOC. NO. 28), AND
PLAINTIFF'S MOTION FOR LEAVE (DOC. NO. 35)**

**I.      INTRODUCTION**

A.A. brings this action under the Individual with Disabilities Education Act

("IDEA"), 20 U.S.C. § 1400, et. seq. against the Avon Board of Education ("Avon"); Dr.

Bridget Heston Carnemolla, Superintendent of Schools (in her official capacity); and Dr.

Kimberly Mearman, Direct of Pupil Services (in her official capacity).

In his single count Complaint, A.A. alleges that Avon has denied him with a free

and appropriate education for the 2018-2019 school year.  See Complaint (Doc. No. 1)

¶ 65.  A.A. appeals a Hearing Officer's dismissal of his Request for Due Process, in

which he sought Avon's reimbursement for his continued education at the Grove

School, a residential education facility, during the 2018-2019 school year.  Id. § VI(b).

Pending before the court is Avon's Motion for Summary Judgment (Doc. No. 23),

A.A.'s Cross Motion for Summary Judgment (Doc. No 28), and A.A.'s Motion for Leave

to Expand Plaintiff's Response to Defendant's Local Rule 56(a)(1) Statement (Doc. No.

35).  For the reasons that follow, Avon's Motion for Summary Judgment (Doc. No. 23) is

1

granted and A.A.'s Motion is denied (Doc. No. 28).  A.A.'s Motion for Leave (Doc. No. 35) is granted.

## II.    FACTS[1]

A.A. is a resident of Avon's public school district and, during the 2016-2017 and 2017-2018 school years, was eligible to receive special education services.[2]  See A.A.'s Local Rule 56(a)2 ("Pl. LR 56(a)2") (Doc. No. 34), ¶ 1.  During the 2016-2107 school year, A.A.'s parents and Avon disagreed over the type of special education services that A.A. should receive.  Id. ¶ 4.  A.A.'s parents then filed a Due Process hearing request with the State of Connecticut Department of Education, pursuant to the relevant provisions of the IDEA.  Id. ¶ 5.  On or about April 27, 2017, the parties negotiated a confidential settlement agreement ("Agreement") to resolve the claims raised in the request for a Due Process hearing.[3]  Avon's Local Rule 56(a)1 Statement ("Def. LR 56(a)1") (Doc. No. 23-2) ¶ 6; see also Settlement Agreement, Administrative Record ("AR") (Doc. No. 23-4), at 30.

The Agreement provided that for the remainder of the 2016-2017 school year, and for the entire 2017-2018 school year, Avon would reimburse A.A.'s parents for the tuition costs of the Grove School, a private residential facility.  Pl. LR 56(a)2 ¶ 11.  In consideration for Avon's payments for the 2017-18 school year, the Agreement provided

---

[1] The undisputed facts are taken from A.A.'s Local Rule 56(a)1 Statement ("Pl. LR 56(a)1") (Doc. No. 28-1), A.A.'s Local Rule 56(a)2 Statement ("Pl. LR 56(a)2") (Doc. No. 34), Avon's Local Rule 56(a)1 Statement ("Def. LR 56(a)1") (Doc. No. 23-2), and Avon's Local Rule 56(a)2 Statement ("Def. LR 56(a)2") (Doc. No. 33).

[2] A.A. contends that he was also eligible for special education services during the 2018-2019 school year, a claim which Avon denies.  Both parties agree, however, that A.A. was eligible for special education services during the 2016-2017 and 2017-2018 school years.

[3] A.A. denies this statement to the extent that it suggests that A.A. was a party to the Agreement. Pl. LR 56(a)2 ¶ 6.

that reimbursement of the Grove School tuition was "made in full and final settlement of all fees, costs and/or damages for any claims relating to the Student's educational program, including but not limited to compensatory education, attorneys' fees, and evaluation fees through the Student's high school graduation, whenever that may occur...".  Id. ¶ 14 (quoting Agreement, AR at 30 ¶ 3).  The Agreement also contained the following waiver:

> It is specifically intended that this Agreement is a waiver of any claim, known or unknown, which the Parents or Student may have against the Board or its agents and employees, in law or in equity, including but not limited to claims pursuant to Conn. Gen. Stat. § 10-76, et. sec., The Individuals with Disabilities Education Act, as amended, Section 504 of the Rehabilitation Act, The Americans with Disabilities Act, 42 U.S.C. Section 1983 and The Family Education Rights and Privacy Act through the 2016-2017 school year and the Student's graduation from high school. The Parents and the Student specifically agree that they shall not bring any claim against the Board, in any forum, related to the Student, the Student's education or seeking reimbursement of any kind, at any time in the future.

Pl. LR 56(a)2 ¶ 17 (quoting Agreement, AR at 32 ¶ 9).

A.A. began attending Grove School in May of 2017.  Pl. LR 56(a)2 ¶ 19.  In June 2018, A.A.'s parents contacted Avon indicating that A.A. was not on track to graduate from Grove School at the end of the Grove school year.  Id. ¶ 20.  A planning and placement team ("PPT") meeting was held on September 6, 2018.  Id. ¶ 23.  During the PPT meeting, staff from the Grove School reported on some aspects of A.A.'s daily living:

> Grove residential staff reported on [A.A.'s] performance over the last year related to his daily living skills in the dorm. No updated formal assessments were given to [A.A.]. Progress reporting was based on anecdotal reporting.  Areas of weakness noted in daily living skills such as [A.A.] needs prompts to shower, make his bed, and put his dirty laundry in the wash.  Grove residential staff also reported at times [A.A.] does not get along with peers.

Id. ¶ 23 (quoting Planning and Placement Team Meeting Summary ("PPT Summary"), AR at 36).  Aside from this PPT Summary, there is no other record in the Administrative Record containing the Grove School's assessment of A.A.[4]  Def. LR 56(a)1 ¶ 22.  The PPT concluded that, because A.A. had earned 29.31 high school credits, A.A. had exceeded the required number of credits needed to graduate.[5]  Pl. LR 56(a)2 ¶ 24.  A.A. was therefore exited from special education and the educational jurisdiction of the Board of Education because he had earned a regular diploma.[6]  Def. LR 56(a)1 ¶ 26.

---

[4] A.A. responds that his "request for a Due Process hearing incorporated information by Grove School, that [A.A.] was markedly behind his peers upon his arrive at the Grove School."  Pl. LR 56(a)2 ¶ 22.  A.A.'s Due Process hearing request notes that the Grove School staff reported to the PPT that A.A. was not ready to graduate.  See Request for Due Process Hearing, AR at 7.  However, the Request for Due Process Hearing did not include any assessments or reports from the Grove School to support the claim that A.A. had ongoing educational deficits.  See id.  Because A.A.'s claims about the Grove School's concerns of A.A. included in his Request for Due Process Hearing are inadmissible hearsay, A.A.'s response does not satisfy the requirements of Local Rule 56(a)(3), which provides:

> Each statement of material fact by a movant in a Local Rule 56(a)1 Statement or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial.

D. Conn. L. Civ. R. 56(a)(3).  Avon's statement—that the only document in the administrative record containing Grove School's assessment of A.A. is the PPT summary—is therefore admitted.

[5] Avon also states that there is no evidence in the administrative record disputing the PPT's conclusion that A.A. met all graduation requirements for a regular high school diploma from the Avon Board of Education.  Def. LR 56(a)1 ¶ 25.  A.A. disputes this statement, and states that he had failed to finish his capstone project.  Pl. LR 56(a)2 ¶ 25.  However, such response fails to raise an issue of material fact; completion of a capstone project is not a high school graduation requirement under Connecticut law.  See Conn. Gen. Stat. § 10-221a.

A.A. further notes that information from Grove School staff clearly established that A.A. was not ready to graduate.  Id.  However, A.A. fails to support this response with a specific citation to admissible evidence.  See D. Conn. L. Civ. R. 56(a)(3).  Furthermore, A.A.'s assertion that Grove School assessed A.A. to be unprepared to graduate is not responsive to Avon's statement that, based on the credits he had earned, A.A. was eligible to graduate under Connecticut law.  See Def. LR 56(a)1 ¶ 25.  Avon's statement is therefore admitted.

[6] In response, A.A. denies that he was properly exited from special education.  Pl. LR 56(a)2 ¶ 26.  A.A. does not deny that he was exited from special education, and that the stated reason for this was the regular diploma that he had earned. This statement is therefore admitted.

On September 17, 2018, A.A. filed a Request for Due Process Hearing with the Connecticut Department of Education, claiming that Avon should not have exited him from special education, and that he was entitled to continued services.  Pl. LR 56(a)2 ¶ 27; see also Request for Due Process Hearing, AR at 5–10.  Avon filed a Motion to Dismiss, arguing that A.A. had met all graduation requirements, was properly exited from special education, and that A.A. had waived all claims against Avon in the April 2017 Settlement Agreement.  Def. LR 56(a)1 ¶ 28; see also Motion to Dismiss, AR at 18–28.

The Hearing Officer issued a Final Decision and Order on November 13, 2018. Pl. LR 56(a)2 ¶ 29; see also Final Decision and Order, AR at 90–96.  The Hearing Officer found that A.A. had already earned a high school diploma and that, therefore, Avon was no longer obligated to provide special education services to him.[7]  Pl. LR 56(a)2 ¶ 30; see also Final Decision and Order, AR at 94 ¶¶ 9, 10.  Because A.A.'s claims were based on events that took place after he was no longer eligible for services under IDEA or Connecticut special education law,  the Hearing Officer dismissed A.A.'s Request for Due Process.  Pl. LR 56(a)2 ¶ 30.  A.A. now appeals the Hearing Officer's decision.

III.    STANDARD

Appeals from an administrative decision, such as this one, "generally are resolved by examination of the administrative record in a summary judgment procedural posture."  J.R. v. Bd. of Educ., 345 F. Supp. 2d 386, 394 (S.D.N.Y.2004).  However, the

---

[7] Based on this conclusion, the Hearing Officer found that the enforcement of the Agreement was not pertinent to the resolution of A.A.'s Request for Due Process.   Final Decision and Order, AR at 96 ¶ 21.

normal summary judgment standard does not apply to such cases.  Lillbask ex. rel. Mauclaire v. Conn. Dept. of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005).  This is because "a motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact.  Rather, the motion serves as a 'pragmatic procedural mechanism' for reviewing a state's compliance with the procedures set forth in IDEA and determining whether the challenged IEP is reasonably calculated to enable the child to receive educational benefits."[8] Id. (quoting Warton v. New Fairfield Board of Educ., 217 F. Supp. 2d 261, 270 (D. Conn. 2002)).

However, before the court could address the merits of A.A.'s claim insofar as they allege a denial of a free appropriate public education ("FAPE") during the 2018– 2019 school year, the court must first address whether the plaintiff has standing to pursue them.  See Fetto v. Sergi, 181 F. Supp. 2d 53, 66 (D. Conn. 2001).  The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 473 (1982).  The Supreme Court has recognized that the

---

[8] Courts have noted that the role of the federal courts in reviewing state educational decisions under the IDEA is "circumscribed."  Muller v. Comm. on Special Educ., 145 F.3d 95, 101 (2d Cir. 1998); see also Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 191 (2d Cir. 2005) ("In reviewing the administrative proceedings, it is critical to recall that IDEA's statutory scheme requires substantial deference to state administrative bodies on matters of educational policy.").  Although the District Court must engage in an independent review of the administrative record and make a determination based on a "preponderance of the evidence," Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 280 (2d Cir. 2003), the Supreme Court has cautioned that such review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review," Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982).  To the contrary, federal courts reviewing administrative decisions must give "due weight" to these proceedings, mindful that the judiciary generally "lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy."  Id. at 206, 208.  A Hearing Officer's decision that "is reasoned and supported by the record" should not be disturbed.  Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 114 (2d Cir.2007).

"'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, 136 S. Ct. at 1547 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Spokeo, 136 S. Ct. at 1547 (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)).

**IV.    DISCUSSION**

    A.    A.A.'s Eligibility to Receive Special Education Services

In its Memorandum, Avon first argues that the Hearing Officer correctly concluded that A.A.  had been exited from special education at the end of school year 2017–2018, and that, therefore, he had no claim for continued services for school year 2018–2019.  Def. Mem. at 11.  Although the Hearing Officer did not the frame the issue as such, Avon correctly notes that the "hearing officer below essentially concluded that A.A. lacked standing to bring his Request for Due Process."  Id. at 11.

A.A. challenges the Hearing Officer's decision to dismiss his Request for Due Process, wherein A.A. sought Avon to reimburse his tuition costs for the 2018-2019 school year at the Grove School.  Avon responds that, because A.A.'s claims were based solely on events occurring after he was no longer eligible for services under the IDEA, the Hearing Officer correctly concluded that A.A.'s claim was not redressable through a due process request.  Therefore, A.A. has failed to carry his burden as to the

second element of standing, that is, that the injury is "fairly traceable" to the challenged

conduct.[9]  Def. Mem. at 13.

Under Connecticut law, the Connecticut Department of Education's authority to

adjudicate claims related to the educational placement of a student is limited to

"child[ren] requiring special education and related services."[10]  Conn. Gen. Stat. § 10-

76h(a)(1).  Section 10-76a(5)(A) defines "a child requiring special education" as "any

exceptional child who (A) meets the criteria for eligibility for special education pursuant

to the Individuals With Disabilities Education Act, 20 USC 1400, et seq., as amended

from time to time . . .".[11]  Eligibility under the IDEA is limited to persons between the

---

[9]  When a student "ages out" during the hearing or litigation, courts in this Circuit addressing
IDEA claims have addressed the issue under the doctrine of mootness, rather than standing.  See e.g.,
M.K. ex rel. Mrs. K. v. Sergi, 554 F. Supp. 2d 201, 218 (D. Conn. 2008).  Because the Hearing Officer
concluded that A.A. was ineligible for special education services at the time he filed his Request for Due
Process with the Department of Education, the case raises an issue of standing, not mootness.  See
Fetto v. Sergi, 181 F. Supp. 2d 53, 67 (D. Conn. 2001) ("Whereas standing is determined as of the time of
the complaint, mootness is evaluated throughout the pendency of the litigation.").

[10] Section 10-76h(5)(1) provides, in full:

A parent or guardian of a child requiring special education and related services pursuant
to sections 10-76a to 10-76g, inclusive, a pupil if such pupil is an emancipated minor or
eighteen years of age or older requiring such services, a surrogate parent appointed
pursuant to section 10-94g, or the Commissioner of Children and Families, or a designee
of said commissioner, on behalf of any such child in the custody of said commissioner,
may request a hearing of the local or regional board of education or the unified school
district responsible for providing such services whenever such board or district proposes
or refuses to initiate or change the identification, evaluation or educational placement of
or the provision of a free appropriate public education to such child or pupil. Such request
shall be made by sending a written request to such board or district with a copy to the
Department of Education.

Conn. Gen. Stat. § 10-76h(5)(1).

[11] Under section 10-76a(5), "a child requiring special education" also includes a student that:

(B) has extraordinary learning ability or outstanding talent in the creative arts, the
development of which requires programs or services beyond the level of those ordinarily
provided in regular school programs but which may be provided through special
education as part of the public school program, or (C) is age three to five, inclusive, and
is experiencing developmental delay that causes such child to require special education.

ages of three and twenty-one, inclusive.  St. Johnsbury Academy v. D.H., 240 F.3d 163,

168–69 (2d Cir. 2001).  However, if state law is more restrictive in terms of the

individuals entitled to a free and appropriate public education, state law will control.[12]

Connecticut's eligibility criteria is so limited and provides that "[t]he obligation of the

school district under this subsection shall terminate when such child is graduated from

high school or reaches age twenty-one, whichever occurs first . . .".  Conn. Gen. Stat. §

10–76d(b); see also Lillbask v. State of Connecticut Dept. of Educ., 397 F.3d 77, 86 &

n.4 (2d Cir. 2005); A. v. Hartford Bd. of Educ., Nos. 3:11-CV-01381 (GWC), 2016 WL

3950079, at *13 (D. Conn. July 19, 2016) ("Assuming that Student progressed through

high school from 2012 through 2016 and has graduated, he would no longer be entitled

to a free and appropriate public education.") (citing 20 U.S.C. § 1412(a)(1)(B)(i) and

Conn. Gen. Stat. § 10-76d(b)).

In her Final Decision and Order, the Hearing Officer found that A.A. had finished

high school on August 17, 2018, having earned a regular high school diploma.  She

then concluded that, "[a]t that point in time, he was no longer entitled to receive special

education nor related services from the Board."  Final Decision and Order, AR at 96.

The IHO's conclusion that A.A. was eligible for graduation is supported by a

preponderance of the evidence.  The uncontroverted evidence before the Hearing

Officer demonstrated that A.A. had earned 29.31 credits, significantly more than the

Connecticut state requirement of 20 credits.  Conn. Gen. Stat. § 10-221a.  Notably, A.A.

---

Conn. Gen. Stat. § 10-76a(5)(B), (C).  There is no evidence to suggest—and A.A. does not argue—that
he would qualify under subsection (B) or (C).

    [12] The IDEA provides that "[t]he obligation to make a free appropriate public education available
to all children with disabilities does not apply with respect to children aged . . . 18 through 21 in a State to
the extent that its application to those children would be inconsistent with State law or practice."  20
U.S.C. § 1412(a)(1)(B)(i).

does not contest that he earned these credits.  Nor does he contest in his Memorandum that these credits are sufficient for a regular high school diploma.  Pl. Mem. at 12–16.  In fact, A.A. admits that, in October 2018, Avon mailed him a high school diploma.  Compl. ¶ 56.  Although A.A. returned the diploma because he believed he had not yet satisfied graduation requirements, see id., he does not appear to dispute that he had, in fact, earned 29.31 high school credits and that Avon issued him a diploma.

Contrary to Avon's assertion, see Def. Mem. at 15, however, nothing in the Connecticut laws indicates that an eligible student must be graduated.[13]  "When faced with this problem, courts have taken the position that notwithstanding a student's satisfaction of local graduation requirements, a school district may not properly graduate a student with disabilities if the student was not provided with FAPE as required by IDEA (e.g., a student did not receive appropriate transitional services or his IEP was not reasonably calculated to provide him educational benefit)."  Doe v. Marlborough Public Schs., No. 09-CV-11118 (WGY), 2010 WL 2682433, *6 (D. Mass. June 30, 2010); see also Bell v. Bd. of Educ. of the Albuquerque Pub. Sch., No. 06-CV-1137, 2008 WL 5991062, at *33 (D.N.M. Nov. 28, 2008); Kevin T. v. Elmhurst Cmty. Sch. Dist. No. 205, No. 01-CV-0005, 2002 WL 433061, at *14–15 (N.D. Ill. March 20, 2002); Chuhran v. Walled Lake Consolidated Sch., 839 F. Supp. 465, 473–74 (E.D. Mich.1993).

---

[13] Section 10-221a(b) of the Connecticut General Statues provides:

(b) For classes graduating from 2004 to 2022, inclusive, no local or regional board of education shall permit any student to graduate from high school or grant a diploma to any student who has not satisfactorily completed a minimum of twenty credits, not fewer than four of which shall be in English, not fewer than three in mathematics, not fewer than three in social studies, including at least a one-half credit course on civics and American government, not fewer than two in science, not fewer than one in the arts or vocational education and not fewer than one in physical education.

The position advanced by the Hearing Officer and Avon—that as soon as soon as a disabled student meets local graduation requirements—he graduates and is no longer eligible for special education services, "would [ ] create an incentive for school districts to provide diplomas simply as a way of washing their hands of any possible liability." Bell, 2008 WL 5991062, at *34.  "This position contradicts the purpose of IDEA to prevent schools from excluding disabled children from receiving an adequate education." Doe, 2010 WL 2682433, at *6.  Therefore, notwithstanding A.A.'s satisfaction of graduation requirements, the court must nevertheless evaluate whether Avon deprived him of FAPE under IDEA by graduating him.

Under the IDEA, school districts have an obligation to provide an individualized educational program that is "reasonably calculated to enable the child to receive educational benefits." Rowley, 458 U.S. at 207.  A school district is not required to furnish "every special service necessary to maximize each handicapped child's potential." Id. at 199. Rather, a school district fulfills its substantive obligations under IDEA if it provides an education program that is "likely to produce progress, not regression" and affords the student with an opportunity greater than mere "trivial advancement." Walczak v. Fl. Union Free Sch. Dist., 142 F.3d 119, 130 (2d Cir. 1998).

A.A. asserts that Avon denied him a FAPE for the 2018-2019 school year because he was improperly exited from special education when, in fact, he required continued education services.  Pl. Mem. at 13, 15.  He asserts that the "Grove School staff during the September 6, 2018 PPT meeting [stated] that Plaintiff had on-going special education needs that required additional services beyond their 2017-2018

school year." Id.  However, the evidence that A.A. cites—notes from A.A.'s September

9, 2018 PPT—does not support this proposition.  The notes state, in relevant part:

> Grove residential staff reported on [A.A.'s] performance over the last year
> related to his daily living skills in the dorm.  No updated formal
> assessment were given to [A.A.].  Progress reporting was based on
> anecdotal reporting.  Areas of weakness noted in daily living skills such as
> [A.A.] needs prompts to shower, make his bed, and put his dirty laundry in
> the wash.  Grove residential staff also reported at times [A.A.] does not get
> along with peers.

PPT Summary, AR at 36.  Nothing from the PPT notes suggests that A.A. required an

additional year of special education services or that Grove School staff made such a

recommendation.

Fundamentally, A.A.'s argument is that, at the end of the 2017-2018 school year,

he was not ready to graduate and that, therefore, the planning and placement team and

the Hearing Officer improperly concluded that he was no longer eligible for special

education services.  Pl. Mem. at 13.  However, A.A. fails to provide any evidence—from

the Grove School or elsewhere—that supports this claim.  Similarly, in his Request for

Due Process filed with the Board of Education, A.A. did not include any assessments or

reports from the Grove School to support the claim that A.A. had ongoing education or

academic deficits.  See Request for Due Process, AR at 5–11.  More importantly,

however, the Hearing Officer properly concluded that, even if his claims were supported

by evidence, Avon was not required to continue services simply because A.A. claimed

he had ongoing transitional needs:

> The Student's claim of a continuing need for special education and
> transition services also misses the mark. Neither IDEA nor Connecticut
> law makes the absence of need for services the benchmark for
> discontinuing services. Indeed, many students, including those who are
> not disabled, have continuing needs for academic and other services after
> graduation from high school. Many are not fully ready to meet the

challenges of adulthood when they leave high school. The law simply
does not require that students be "ready" when they graduate from high
school and lose eligibility for special education and related services.

Final Decision and Order, AR at 95; see also Doe, 2010 WL 2682433, at *9 ("[T]he

inquiry is not whether the Student was fully prepared for independent living or whether

he continued to have significant problems in some areas.  All these arguments tend to

look at the result, where the correct standard is to look at whether the school, by virtue

of a reasonably calculated IEP, made educational benefit available to the Student.").

The record before the court demonstrates that Avon fulfilled its obligation to A.A.

During the 2016-2017 school year, A.A.'s parents requested that A.A. be placed in at

Grove School, a residential facility.  Def. LR 56(a)1 ¶ 10.  After A.A. parent's filed a

Request for Due Process to contest Avon's denial of that placement, the parties

successfully negotiated a settlement resolving the issue of A.A.'s placement.  Id.  By

agreeing to reimburse A.A.'s parents for Grove School tuition for part of the 2016-2017

school year, and for the entire 2017-2018 school year, Avon provided A.A. with a free,

appropriate public education.  While enrolled at the Grove School, A.A. successfully

progressed to 12th grade, and, during the 2018-2019 school year, earned passing

marks in all his classes.  AR at 79.  By the end of 12th grade, A.A. had earned 29.31

credits, AR at 35, significantly more than the Connecticut state requirement of 20

credits, Conn. Gen. Stat. § 10-221a.  Most importantly, however, A.A. provides no

evidence from Grove School teachers or staff that supports his claim that he is not

ready to graduate, or that his placement at the Grove School was not "reasonably

calculated to enable the child to receive educational benefits."  Rowely, 458 U.S. at 207.

The record thus demonstrates that A.A. was not deprived of a free and appropriate public education because his placement at the Grove School was reasonably calculated to provide him education benefit.  After meeting the district's graduation requirements, A.A. was provided a regular high school diploma, and properly exited from special education.  A.A.'s Request for Due Process focused on claims related to the 2018-2019 school year; therefore, the Hearing Officer properly concluded that these claims involve a time when he was no longer an eligible individual under the IDEA.

B.   The April 2017 Settlement

Avon argues that, even if this court were to find that A.A. was eligible for special education services during the 2018-2019 school year, "A.A.'s claims that he was denied FAPE are barred by the doctrines of settlement and release, and waiver, due to the April 27, 2017 settlement agreement between the parties."  Def. Mem. at 17.  The court agrees.

As previously discussed, during the 2016-2017 school year, A.A.'s parents and Avon disagreed over the type of special education services A.A. should receive.  After A.A.'s parents filed a request for Due Process hearing under the IDEA, the parties attended a mediation session conducted pursuant to 34 C.F.R. § 300.510, which establishes the procedural requirement for an IDEA mediation.  See Compl. (Doc. No. 1), ¶ 13.  During this mediation session, the parties successfully negotiated a settlement agreement ("Agreement").  See AR at 30.  The Agreement provides that, for some portion of the 2016-2017 school year, and all of the 2017-2018 school year, Avon would reimburse A.A.'s parents for the tuition costs of Grove school–the parents' preferred

14

placement.  See Agreement, AR at 30 ¶ 2. In consideration for these tuition payments

(totaling $110,000), A.A. and his parents waived all claims for any services or

reimbursements past school year 2017-2018 and A.A.'s graduation from high school:

> It is specifically intended that this Agreement is a waiver of any claim,
> known or unknown, which the Parents or Student may have against the
> Board or its agents and employees, in law or in equity, including but not
> limited to claims pursuant to Conn. Gen. Stat. § 10-76, et. sec., The
> Individuals with Disabilities Education Act, as amended, Section 504 of the
> Rehabilitation Act, The Americans with Disabilities Act, 42 U.S.C. Section
> 1983 and The Family Education Rights and Privacy Act through the 2016-
> 2017 school year and the Student's graduation from high school. The
> Parents and the Student specifically agree that they shall not bring any
> claim against the Board, in any forum, related to the Student, the
> Student's education or seeking reimbursement of any kind, at any time in
> the future.

Agreement, AR at 32 ¶ 9.  A.A. seeks Avon's reimbursement for his continued

education at Grove School, despite the clear language of the Agreement.

"Congress has expressly provided for enforcement of IDEA settlement

agreements in federal district courts when the agreement at issue was entered into

through the IDEA mediation process, 20 U.S.C. § 1415(e)(2)(F), or at a resolution

session required by § 1415(f)(1)(B), see id. § 1415(f)(1)(B)(iii)."  H.C. ex rel. L.C. v.

Colton-Pierrepont Cent. Sch. Dist., 341 F. App'x 687, 690 (2d Cir. 2009) (internal

punctuation omitted) (summary order).  District courts within this Circuit have

recognized that settlement agreements between parents and school boards are

enforceable, and "should be encouraged in light of the significant federal policy favoring

settlements."  K.G. v. Plainville Bd. of Educ., No. 06-CV-1907 (CFD), 2007 WL 80671,

at *3 (D. Conn. Jan. 9, 2007); see also Mr. J. v. Bd. of Educ., 98 F. Supp. 2d 226, 238

(D. Conn. 2000).

Substantively, the Agreement covers all of A.A.'s claims in this case.  In his Complaint, A.A. asks this court to reverse the decision of the Hearing Officer and "[o]rder the Defendants to reimburse the Plaintiff for the costs of the Grove School placement for the 2018-2019 Grove School school year."  Compl. § IV(b), (f). However, such claim is barred by the unambiguous language of the Agreement.  See Settlement, AR at 32 ¶ 9 ("The Parents and the Student specifically agree that they shall not bring any claim against the Board, in any forum, related to the Student, the Student's education or seeking reimbursement of any kind, at any time in the future."); see also id. at 31 ¶ 3 ("It is specifically understood that any further educational or transitional services costs [beyond school year 2017-2018] will be the sole responsibility of the Parents and the Student.").[14]  Similarly, A.A. and his parents waived claims for reimbursement even if A.A. failed to complete graduation requirements: "Except as noted in paragraph 6,[15] if the Student does not complete the requirements for

---

[14] As indicated by the brackets, the words "beyond school year 2017-2018" do not appear in this quoted text.  However, the context of that paragraph makes clear that "any further educational or transitional costs" refer to costs incurred after the conclusion of the 2017-2018 school year. Id. at 31 ¶ 3. Paragraph three begins by detailing the payments made by Avon to A.A. for the 2017-2018 school year. See id.  The paragraph goes on to state: "[i]n consideration for the above payments, the Parents agree that they will not seek reimbursement for any additional costs related to the Student's educational program from the Board . . . for all time going forward from this date."  Id.  The paragraph also states that, "if the Student does not complete the requirements for graduation by June of 2018, the Parents and the Student agree that the Student will complete his education through a GED or adult education, which shall be paid for by the Parents."  Id.  Therefore, the paragraph makes clear that, as reflected in the bracketed text, the Settlement Agreement released Avon from any responsibility of paying for the educational or transitional services of A.A. after the 2017-2018 school year.

[15] Paragraph 6 provides, in relevant part:

If, at any time during the effectiveness of this Agreement, the Student ceases to be on track to graduate by June of 2018 because of the Student's failure to complete work, earn credits or because the student is abusing substances, the Grove School and the Parents must notify the Board in writing immediately.  In such circumstance, the Board may notify the Parents that the Board's responsibility for reimbursement under paragraphs 2 and 3 shall cease and a PPT meeting will be convened to plan a program for the Student in order to enable him to graduate from high school.

graduation by June of 2018, the Parents and the Student agree that the Student will

complete his education through a GED or adult education, which shall be paid for by the

Parents." Id. at 31 ¶ 3.  Thus, the clear and unambiguous language of the Agreement

bars A.A.'s claims for reimbursement from Avon.

A waiver of IDEA claims must also be "'knowing and voluntary' as judged by the

'totality of the circumstances.'"  Rutherford v. Fla. Union Free Sch. Dist., No. 16-CV-

9778 (KMK), 2019 WL 1437823, at *27 (S.D.N.Y. Mar. 29, 2019) (citing W.B. v. Matula,

67 F.3d 484, 497 (3d Cir. 1995).  Here, the evidence before this court demonstrates that

the waiver was both knowing and voluntary.  First, A.A.'s parents were represented by

counsel during the mediation process and the execution of the Agreement:

> The Parents acknowledge that they have at all times pertinent hereto been
> represented by Jillian Griswold, who is an attorney who is experienced in
> this area of the law. This Agreement has been fully explained to them by
> Attorney Griswold and they have had full opportunity to discuss this
> Agreement, and the terms and conditions hereof, with any person they
> deem appropriate. The Parents represent and warrant that they are
> entering into this Agreement voluntarily and knowingly, with a full and
> complete understanding of the terms and conditions of this Agreement.

Agreement, AR at 32 ¶ 10; see also id. ¶ 7 ("The parties agree that they are entering

into this Agreement voluntarily . . .").  Furthermore, the result of the Agreement—Avon

reimbursing A.A.'s parents for his education at the Grove School—was the favored

outcome of A.A. and his parents.  Under these circumstances, the court cannot find that

---

Agreement, AR at 31 ¶ 6.  A.A. claims that he is not prepared to graduate because of continued
educational deficits, not because of a "failure to complete work, earn credits or because [he] is abusing
substances." Id.  Therefore, paragraph 6 is inapplicable.

Even if paragraph 6 applied to A.A.'s circumstances, a PPT meeting was convened.  During that
PPT meeting, it was decided that A.A. had earned enough credits to satisfy the state's graduation
requirement.  See AR at 35-35.

the Agreement was not voluntarily or not willingly entered into by A.A. and his parents. See Muse B. v. Upper Darby Sch. Dist., 282 F. App'x 986, 989 (3d Cir. 2008) ("The Consent Decree was negotiated by experienced counsel, was favorable to Hanna B. and her son insofar as it provided for placing Muse B. in the regular third grade at his neighborhood school, with specialized services provided daily."). Furthermore, there is no allegation that the Agreement was coerced or ambiguous. See Rutherford, 2019 WL 1437823, at *27 ("Plaintiffs do not allege that they unknowingly or involuntarily signed the Agreement, or that they were somehow coerced into signing it. Nor do Plaintiffs allege that they did not understand the terms of the Agreement or that they were confused at the time they entered into it."). Because A.A. has specifically waived the remedy he seeks, and because the Agreement was entered into by A.A. and his parents voluntarily and knowledgably, A.A.'s present action against Avon is barred by the Agreement.

A.A. does not contest the fact that the Agreement applies directly to his claims in this case. Nor does he contest the fact that the waiver was both knowing and voluntary. Instead, A.A. argues that the Agreement does not preclude him from pursuing claims that accrued after he turned 18 years old. Furthermore, A.A. claims that the Agreement should not be enforced as a matter of public policy. Pl. Mem. at 16. The court disagrees.

As to A.A.'s first claim, the text of the Agreement makes clear that the Agreement binds both the parents and A.A. See Agreement, AR at 32 ¶ 9 ("The Parents and the Student specifically agree that they shall not bring any claim against the Board . . .") (emphasis added). Although the Agreement was executed by A.A.'s parents and not

18

A.A., A.A. does not argue that they lacked the legal authority to do so and, as a minor, A.A. would have been unable to execute the Agreement on his own.  See 20 USC § 1415(e)(2)(F)(ii) ("In the case that a resolution is reached to resolve the complaint through mediation process, the parties shall execute a legally binding agreement that sets forth such resolution and that is signed by both the parent and a representative of the agency who has the authority to bind such agency . . .") (emphasis added).

   A.A. provides the court with no authority which supports his contention that, upon turning 18, A.A. is no longer bound by the Agreement.  The contention is both without precedent and merit.  Courts that have addressed such arguments have rejected them. See McCarthy v. Scottsdale Unified School Dist., No. CV-1351-PHX, 2019 WL 3997369, at *9 (D. Ariz. Aug. 23, 2019); Anderson v. Abington Heights Sch. Dist., No. 3:12-CV-2486, 2017 WL 6327572, at *12-14 (M.D. Pa. Dec. 11, 2017) (noting that Pennsylvania law permits the minor's parents to enter a settlement releasing the minor's educational claims).  Connecticut law, like the IDEA, provides parents and school districts the option to resolve educational disputes through mediation.  Conn. Gen. Stat. § 10-76h(f)(1).  As Avon correctly notes, "[t]o posit that parents lack the authority to bind their minor children to these types of agreements . . . is unsupported by any legal precedent, and would render it impossible to ever settle an IDEA claim."  Def. Mem. at 18 n.12.  Such an outcome would frustrate the intent of Congress and the Connecticut legislature, which expressly provided for mediations in settlements.  See 20 U.S.C. § 1415(e)(1) (ensuring that school agencies establish procedures to allow parties "to resolve such disputes through a mediation process"); Conn. Gen. Stat. § 10-76h(f)(1) (providing the option of mediation to resolve disputes involving the educational services

and placement of students requiring special education).  While a different rule may

govern general civil cases involving minors, "Congress has provided in the IDEA that

parents may enter legally binding settlement agreements with educators." McCarthy,

2019 WL 3997369, at *9 n.4; see also Anderson, 2017 WL 6327572, at *13 ("[T]o hold

otherwise would deter a school district from entering into any settlement or release with

a parent or guardian with respect to a child's educational rights, without court approval,

out of a concern that upon reaching the age of majority, the young adult would bring an

action for the very same claims that were previously released.").

A.A. next argues that the Agreement is void as a matter of public policy.  In

support of this argument, A.A. cites to a single, unpublished Superior Court case, New

Fairfield Board of Education v. Cortese, No. CV-03-0349701-S, 2005 WL 647556

(Conn. Super. Ct. Jan. 24, 2005).  In Cortese, the Superior Court found certain

provisions of a similar agreement to be unenforceable:

> The IDEA contemplated protections for the parents of children with
> special education needs that cannot be overridden . . . To the
> extent the terms of the settlement agreement are inconsistent with
> the policy goals and requirements of the IDEA, they may be
> deemed unenforceable. The provisions of the settlement
> agreement that restrict the right of the defendants to request a due
> process hearing to determine the appropriate special education
> placement of their child is against the public policy of the state of
> Connecticut.

Id. at *5.  No cases have cited Cortese for the proposition that A.A. cites it for, and A.A.

does not direct this court's attention to any other decision in which a waiver of IDEA

claims was found unenforceable as a matter of public policy.  See Pl. Mem. at 18.

Indeed, other courts in Connecticut have found such waivers to be enforceable.  See

Mr. J, 98 F. Supp. 2d at 238 ("Public policy dictates that settlement agreements should

be enforced."); see also K.G., 2007 WL 80671, at *3.  Although the Second Circuit has

not addressed the issue, other Circuits have reached the same conclusion.  See S.

Kingstown Sch. Comm. v. Joanna S., 773 F.3d 344, 353 (1st Cir. 2014); T.B. ex rel.

Brenneise v. San Diego Unified Sch. Dist., 806 F.3d 451, 482 n.14 (9th Cir. 2015).

In the D.R. v. East Brunswick Board. of Education, 109 F.3d 896, 901 (3d Cir.

1997), the Third Circuit similarly held that a settlement agreement between parents of a

child requiring special education and a school board was enforceable so long as the

agreement was voluntarily and willingly entered into by the parties.  In that agreement,

the parties agreed that the school board would pay $27,500 towards D.R.'s placement

costs in a residential program, but would not be responsible for additional costs, related

services, or transportation.  Id. at 899.  After the agreement was signed, D.R.'s teachers

determined that D.R. required the assistance of a one-on-one aide, which would double

tuition costs.  Id.  The school board refused to pay the additional amount.  Id.   At the

conclusion of a due process hearing, the Hearing Officer determined that the agreement

was binding on the parties and that, therefore, the school board was not obligated to

pay for the additional services.  Id.  On appeal, the district court found that D.R.'s

circumstances had changed such that the services being provided under the agreement

no longer satisfied the IDEA.  Id. at 900.  The district court further held that, because the

one-on-one aides were educationally necessary, and because disabled students are

statutorily entitled to educationally necessary services, D.R.'s parents could not

contractually waive D.R.'s right to receive those services.

The Third Circuit reversed.  First, it held that D.R.'s circumstances had not

changed:

> [T]he only circumstance that changed was that [D.R.'s school] decided
> that its staff could not maintain the level of individualized attention that
> D.R. was receiving at the negotiated price . . . The school decided that
> additional help was needed to deal with D.R.'s <u>unchanged</u> condition,
> increasing the total cost of services provided by the school.

<u>Id.</u> at 900-01 (emphasis in original).  In holding that D.R.'s parents were bound by the

settlement agreement, the court reasoned:

> We are concerned that a decision that would allow parents to void
> settlement agreements when they become unpalatable would work a
> significant deterrence contrary to the federal policy of encouraging
> settlement agreements.  <u>See</u> <u>McDermott, Inc. v. AmClyde</u>, 511 U.S. 202,
> 213–15 (1994) ("Public policy wisely encourages settlements.").
> Settlement agreements are encouraged as a matter of public policy
> because they promote the amicable resolution of disputes and lighten the
> increasing load of litigation faced by courts. In this case, public policy
> plainly favors upholding the settlement agreement entered between D.R.'s
> parents and the Board.

<u>Id.</u> at 901.  The Third Circuit further held that when parents challenge services provided

pursuant to the unambiguous language of a settlement agreement, there must be a

showing of changed circumstances.  <u>Id.</u>  Because D.R. failed to make this showing, it

found that the agreement was enforceable and that the school was not liable for the

cost of the personal aides.  <u>Id.</u>

    The court finds the Third Circuit's reasoning persuasive.  <u>See</u> <u>Mr. J.</u>, 98 F. Supp.

2d at 238 (finding the same).  To avoid rendering settlements in future cases a nullity, a

party in A.A.'s position must show that his circumstances have changed since the

Agreement was executed.  <u>See</u> <u>E.D. ex rel. Dukes v. Enter. City Bd. of Educ.</u>, 273 F.

Supp. 2d 1252, 1269 (M.D. Ala. 2003).  Here, A.A. has failed to make that showing.

A.A. argues that he has ongoing special education needs that require an additional year

at the Grove School.  Even if, assuming <u>arguendo</u>, this claim was supported by the

evidence, it does not constitute a changed circumstance.  To borrow language from the

22

Third Circuit, "[t]here was no change in [A.A.]'s individual circumstances; he continued to need individual assistance . . . [A.A.] decided that additional help was needed to deal with [his] <u>unchanged</u> condition."  109 F.3d at 900.  A.A.'s claim that he is not "on track to graduate" is similarly unavailing.  The Hearing Officer properly found that, based on the credits he has earned and the state's graduation requirements, A.A. is eligible to graduate.  <u>See</u> Final Decision and Order, AR at 95 ¶ 16.  Because A.A. fails to demonstrate changed circumstances, his claims for reimbursement are barred by the Agreement's unambiguous and voluntary waiver.

## V.    CONCLUSION

For the foregoing reasons, Avon's Motion for Summary Judgment (Doc. No. 23) is granted as to Avon Board of Education.  Because A.A. makes no argument or provides no evidence as the individual liability of Superintendent Carnemolla and Director Mearman, summary judgment is granted as to these defendants, as well.  A.A.'s Motion for Summary Judgment (Doc. No. 28) is denied.

**SO ORDERED.**

Dated this 14th day of January 2020 at New Haven, Connecticut.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge